UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MIROSLAVA LEWIS,

                Plaintiff,

     v.

VAIL RESORTS, INC., *et al.*,

                Defendants.

CASE NO. 2:23-cv-00812-RSL

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 74. Plaintiff alleges that she was injured in January 2022 while working as a chairlift operator at Stevens Pass Resort and seeks to hold companies affiliated with her employer liable for those injuries.[1] Defendants seek summary dismissal of all of plaintiffs' claims on the grounds that (1) workers' compensation is the exclusive remedy for plaintiff's injuries; (2) the Vail defendants owed no legal duty of care independent from plaintiff's employer and/or did not cause plaintiff's injuries; and (3) there is no evidence that could justify piercing the corporate veil.

---

[1] Plaintiff was employed by VR NW Holdings, Inc., which does business as Stevens Pass Resort. Defendant Vail Holdings, Inc. ("VHI") wholly owns VR NW Holdings, Inc. Defendant Vail Resorts, Inc. ("VRI") wholly owns defendant VHI and defendant The Vail Corporation. VHI and VRI, the direct parent and grandparent of plaintiff's employer, have no employees and operate solely through their subsidiaries, VR NW Holdings, Inc., and The Vail Corporation, respectively.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 1

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, including plaintiff's sur-reply,[2] and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

This lawsuit was filed on May 31, 2023, against defendant Vail Resorts, Inc., and a number of Doe entities. Dkt. # 1. Vail Resorts filed a motion for summary judgment asserting that plaintiff's remedies were limited to those provided by Washington's workers' compensation system and that claims against affiliated companies were barred. Dkt. # 22. Plaintiff opposed dismissal and filed a motion to join as defendants Vail Holdings, Inc., and The Vail Corporation. Dkt. # 34 and # 40. The Court denied the motion for summary judgment and granted leave to amend. Dkt. # 47.

With regards to defendants' workers' compensation argument, the only new evidence submitted is the declaration of Matylda Spataro. Ms. Spataro, the Director of Insurance and Risk for The Vail Corporation, states that The Vail Corporation provides funding to the Washington State workers' compensation fund on behalf of VR NW Holdings, Inc. Dkt. # 75 at ¶ 3.

---

[2] The Court has not resolved defendants' untimely *Daubert* challenge to the report of plaintiff's expert, Richard Penniman. The local civil rules of this district require that *Daubert* motions to be filed by the dispositive motion deadline and be noted for consideration 28 calendar days later. There is no indication that defendants were in some way prevented from timely seeking to exclude Mr. Penniman's opinions.

This matter can be resolved on the papers submitted. Defendant's request for oral argument is therefore DENIED.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 3

The details regarding how the various Vail entities interact and what they did or did not do in relation to the chairlift where plaintiff was injured are discussed below in the context of the duty and causation analysis.

## DISCUSSION

**A. Exclusivity of Workers Compensation**

Defendants argue that plaintiff's claims are precluded because The Vail Corporation paid into the workers' compensation fund on behalf of VR NW Holdings, Inc., and the other two Vail entities are parents of VR NW Holdings, Inc. Under Washington's industrial insurance scheme, an employer is immune from civil lawsuits by its employees for non-intentional workplace injuries. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 17–18 (2005); RCW 51.04.010; RCW 51.24.20. The Act provides, however, that "[i]f a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person." RCW 51.24.030(1). "When compensable injury is the result of a third person's tortious conduct, all statutes preserve a right of action against the tortfeasor, since the compensation system was not designed to extend immunity to strangers." *Manor v. Nestle Food Co.*, 131 Wn.2d 439, 450 (1997) (quoting 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 71.00, at 14–1 (1993)). In short, "immunity follows compensation responsibility" under the statutory scheme. *Id.* (quoting 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 72.33, at 14-290.3).

Defendants do not assert that they were plaintiff's employer in January 2022. Rather, they argue that the purpose of the industrial insurance scheme will be circumvented if a worker is permitted to sue a parent company that was not involved in the negligent conduct at issue. Defendants' argument confounds two different legal issues. The first, discussed in this section, is whether defendants are entitled to immunity under the Industrial Insurance Act. If they are not, the second issue, discussed in the next sections, is whether they can be held liable for plaintiff's injuries under a negligence or veil piercing theory.

Affiliated corporate entities are, by law, separate legal entities and are not automatically lumped together under the label "employer" for purposes of workers' compensation. *McGill v. Auburn Adventist Academy*, 127 Wn. App. 1047, at *7-8 (2005). A non-employer affiliated corporate entity can claim the employer's immunity from suit under the Industrial Insurance Act only where it is responsible for the compensation obligations imposed by the Act. *See Minton v. Ralston Purina Co.*, 146 Wn.2d 385, 393 (2002) (holding that a parent in a self-insured family of corporations that had agreed to pay its subsidiary's compensation obligations was immune from suit); *Manor*, 131 Wn.2d at 450, 453 (noting that a parent corporation that was obligated to (and did) pay its own funds as compensation for workplace injuries was immune from suit); *Jaimes v. NDTS Constr., Inc.*, 194 Wn. App. 1020, at *3 (2016) (finding that immunity flows from either the status of "employer" or compensation responsibility, not from corporate relationships or the payment of workers' compensation premiums).

Defendants have shown no more than that The Vail Corporation contributed in some unspecified way to Washington's Industrial Insurance fund on behalf of VR NW Holdings, Inc. As discussed above and in the Court's March 2024 Order denying defendants' motion for summary judgment, simply paying into the workers' compensation system through premiums or other forms of contribution does not make a corporate affiliate immune from employee lawsuits. There is no indication that the Vail family of corporations is self-insured for purposes of the Industrial Insurance Act or that any of the defendants had agreed to (or did) pay VR NW Holdings' compensation obligations to plaintiff. To the contrary, Ms. Spataro's declaration[2] suggests and defendants have admitted that VR NW Holdings is a participant in the state fund program and that plaintiff received compensation from the state fund, not from any of the named defendants. Defendants are not immune from suit under the Industrial Insurance Act.

**B. Negligence**

Defendants argue that, as parent or otherwise affiliated companies, they owe no duty to guests or employees at Stevens Pass Resort. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.'" *Minton*, 146 Wn.2d at 398 (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998)). A parent company can, however, "be held directly liable for its own

---

[2] The Court has taken Ms. Spataro's declaration at face value for purposes of this motion for summary judgment but recognizes that her statements directly contradict defendants' prior admission that VR NW Holdings pays the premiums for its workers compensation insurance. Dkt. # 82-30 at 3.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 6

conduct when the parent company directly participates in the conduct, directs the conduct, or the alleged wrong can otherwise be traced to the actions of the parent company." *Hagstrom v. Safeway Inc.*, No. C20-1160 RAJ-TLF, 2020 WL 6826736, at *3 (W.D. Wash. Nov. 20, 2020) (citing *Bestfoods*, 524 U.S. at 64-65).

Defendant VRI acquired the Stevens Pass Resort in 2018. VRI is a holding company and acts solely through its subsidiaries, which include The Vail Corporation and VHI. VHI is also a holding company and acts solely through its subsidiary, VR NW Holdings. Plaintiff has made no effort to show that holding companies with no employees can act or fail to act in a way that could generate liability under a negligence theory. Because only The Vail Corporation has employees whose actions or inactions may have given rise to a duty and/or caused plaintiff's injuries, only its potential liability is discussed in this section. If VHI and/or VRI can be held liable for the actions or inactions of their wholly-owned subsidiaries, it must be under the veil piercing analysis discussed in the next section.

In the context of this motion for summary judgment, the Court must determine whether plaintiff has come forward with sufficient evidence (1) to support the imposition of a duty owing from The Vail Corporation to VR NW Holdings employees and (2) to create a triable issue of fact regarding whether a breach of that duty caused plaintiffs' injuries. Plaintiff argues that The Vail Corporation had a duty to install safety netting on the light side of the Kehr's Chair, to adopt procedures for employee downloading, and to enforce the safety policies, procedures, and guidelines it promulgated. Defendants cite to

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 7

evidence in the record suggesting that the failures that caused plaintiff's injury were the result of decisions made by local VR NW Holdings employees without any input, monetary contributions, or approvals from the Vail defendants. From this evidence, defendants argue they had no duty with regards to the safety of the Kehr's Chair or its operators.

Plaintiff, however, has come forward with evidence which, taken in the light most favorable to her, could support a finding that The Vail Corporation's own actions and inactions gave rise to the unsafe conditions at the Kehr's Chair in January 2022. In evaluating whether to purchase Stevens Pass Resort, The Vail Corporation commissioned a detailed engineering report regarding all of the lifts on the property. Dkt. # 82-2; Dkt. # 82-5 at 34. The report noted that the current operators had a plan to replace the Kehr's lift, pointed out that the lift had surpassed its design life, and recommended that the lift be replaced in 2017 (or at least by the end of 2019). Dkt. # 82-1; Dkt. # 82-2 at 7. The ultimate decision regarding whether and when to replace a chairlift at Stevens Pass Resort was made by The Vail Corporation, which controlled the allocation of capital. Dkt. # 82-5 at 35. Despite indications that the Kehr's lift posed safety concerns, The Vail Corporation chose to replace the Brooks and Daisy chairlifts. Dkt. # 82-3; Dkt. # 82-8 at 10.

After the acquisition was complete and the daily operation of the Stevens Pass Resort was handed off to a Vail subsidiary, The Vail Corporation retained the power to inspect the Stevens Pass lifts and lift operations. Dkt. # 82-6 (scheduling time to observe and review Stevens Pass inspection procedures and records with the goal of evaluating

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 8

and/or validating its inspection and recordkeeping procedures); Dkt. # 82-6 and # 82-7 (The Vail Corporation employees began evaluating the Stevens Pass lift inspection systems shortly after the acquisition in August 2018, with a focus on the Kehr's and Skyline lifts). It also retained the power to mandate changes to the lifts and lift operations when the inspections revealed something that was not to its liking. Dkt. # 82-8 at 10 (the Senior Director of Lift Maintenance for The Vail Corporation inspected all of the Stevens Pass lifts in 2019 and mandated recordkeeping changes and the replacement of the chairs on the Seventh Heaven lift).

In addition, The Vail Corporation retained direct supervisory control over health and safety at Stevens Pass Resort. In mid-2020, The Vail Corporation installed Frank Polizzi as Senior Manager of Health and Safety at Stevens Pass. Dkt. # 82-16 at 7. He reported directly to The Vale Corporation's Regional Director for Health and Safety rather than to the General Manager of Stevens Pass. Dkt. # 82-5 at 12; Dkt. # 82-16 at 8-10. Polizzi raised concerns regarding the safety of the Kehr's lift – including the speed of the lift and the lack of fall protection -- with his Vail Corporation superiors during his first season as Senior Manager of Health and Safety. Dkt. # 82-16 at 13. Despite informing The Vale Corporation that the Kehr's lift situation required immediate correction, Polizzi was told by the Regional Director for Health and Safety that the condition of the lift was acceptable and met industry standards. Dkt. # 82-16 at 13-14. No changes were authorized or made.

The Vail Corporation also established mandatory operational and maintenance policies, practices, procedures, and guidelines for its family of ski resorts, including Stevens Pass. Dkt. # 82-5 at 17-18. As early as 2014, The Vail Corporation had in place fall protection procedures that required training for anyone who would be working 4 feet or more above the next level and specified that unprotected edges of a workspace (like the one from which plaintiff fell) must have a guardrail system, a safety net system, or personal fall protection equipment. Dkt. # 82-9. These requirements mirrored OSHA's fall protection standards. 29 C.F.R. § 1910.28(b)(1)(i). Through the evaluations and inspections discussed above, The Vail Corporation was aware that at least some of these requirements were not being met on the Kehr's Chair. The Vail Corporation also appears to have forwarded an operations manual to the Stevens Pass lift operators. Dkt. # 87-3. The Lift Operations Employee Manual addressed a wide range of topics, including detailed instructions on how to stop the lift and load guests for a trip down the mountain. Dkt. # 87-3 at 13-14. There were no instructions for downloading employees.

 Finally, The Vail Corporation introduced a reporting system at Stevens Pass Resort that provided additional information regarding the dangers associated with moving chairs and lack of nets on the downhill (a/k/a light) side. In December 2020, an employee was knocked off the light side of the Seventh Heaven lift, falling approximately 10 feet to the ground below. Dkt. # 82-19 at 4 and # 82-20. There was no safety net on that side of the platform. Dkt. # 82-20 at 8. An incident report was sent to The Vail Corporation,

describing the incident as a "Near Miss"[3] and indicating that corrective measures should be given a high priority and completed within 1-3 days. Dkt. # 82-20 at 4-5. A lack of training and lack of chair path markers on the platform were identified as root causes and/or fixable problems. The proposed path markers were approved and completed a week later. Dkt. # 82-20 at 5.

      The December 2020 accident triggered a conversation between and among various Stevens Pass employees and Vince Arthur, the Director of Mountain Operations Vail had hired for Stevens Pass in June 2020. Dkt. # 82-16 at 27 (discussing transitional period when new senior leadership from Vail was installed). The group agreed that a net needed to be installed on the light side of Kehr's because a fall from there could be catastrophic. Dkt. # 82-21 at 2; Dkt. # 82-22 at 3. Scott Olsen, the Stevens Pass Lift Maintenance Manager at the time, recommended a capital project given that capital expenditures above $1,000 had to go through an application and approval process established by The Vail Corporation. Dkt. # 82-5 at 40-43; Dkt. # 82-22 at 2. Unfortunately, the capital budget for 2021 had already been approved, so the next opportunity to request funding would not arise until the fall of 2021 as the 2022 budget was compiled. While there is no indication that any Vail Corporation employees participated in this conversation, the risk of falls from unnetted platforms was clear from the December 2020 incident report, the fact that the proposed remedy did not include installation of a net was similarly documented, and the

---

[3] The employee apparently fell into snow, but landed between a piece of rebar sticking out of the ground and the cable drop. Dkt. # 82-21 at 4.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 11

Stevens Pass personnel believed that a request for funding had to wait for approximately a year pursuant to the The Vail Corporation financial procedures and practices. Dkt. # 82-23 at 34-35. Plaintiff fell from the lift platform in January 2022.

Washington defines negligence as "the failure to exercise ordinary care. It is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do some act that a reasonably careful person would have done under the same or similar circumstances." 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 10.01 (Apr. 2022 Update). Taking the evidence in the light most favorable to plaintiff, the Court finds that The Vail Corporation had inserted itself into the safety, lift operations, and budgeting protocols at Stevens Pass Resort to such an extent that it had a duty to take reasonable steps – or to order Stevens Pass Resort to take reasonable steps -- to address the risks associated with employee downloading on the Kehr's chair. A reasonable jury could find that the breach of that duty, including the failure to install a net or to establish a procedure for employee downloading, caused plaintiff's fall and injuries.

**C. Piercing the Corporate Veil**

Plaintiff argues that the "Vail Defendants so dominated Stevens Pass that they were merely one in the same" and should be held liable as the alter egos of VR NW Holdings, Inc. Dkt. # 81 at 27. This argument conflates the three separate Vail entities. The Vail Corporation, as discussed above, may have acted or failed to act in an unreasonable manner with regards to employee safety at the Kehr's Chair and faces potential liability for

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 12

plaintiff's injuries under a negligence theory. To the extent plaintiff is separately arguing that The Vail Corporation is her employer's alter ego, she relies almost entirely on the opinions of Richard Penniman, which state only that "Vail Corporate exerted authority and control over the hiring, budgeting, financing, messaging and public relations, operations, and safety policies and reporting of safety incidents and concerns." Dkt. # 82-24 at 13-15.[4]

In general, Washington law recognizes corporations as separate and distinct legal entities. In order to disregard the corporate form and hold the parent liable for the subsidiary's conduct and/or obligations, plaintiff must show that "the corporation has been intentionally used to violate or evade a duty owed to another." *Morgan v. Burks*, 93 Wn.2d 580, 585 (1980). Plaintiff does not argue that The Vail Corporation or VR NW Holdings was set up to defraud her in particular or employees in general. Plaintiff was afforded the protections of Washington's workers' compensation system, and there is no indication that the corporate family structure in any way impeded plaintiff's ability to seek a remedy through that system. That workers' compensation is a limited remedy is not the fault of defendants or their corporate structure. Assuming for purposes of this motion that plaintiff has damages that exceed what was available through workers' compensation, neither harm nor the absence of an adequate remedy establishes corporate misconduct. "The purpose of a corporation is to limit liability. Unless we are willing to say fulfilling that purpose is

---

[4] Where Mr. Penniman's conclusions are unsupported (or affirmatively contradicted) by the record evidence, they have not been considered. The Lift Optimization Performance Playbook quoted at Dkt. # 82-24 at 15 does not, for example, say that stopping a lift for 3 minutes per hour would result in a 75% performance reduction. Nor can the Stevens Pass Lift Operations Manual, which directs that chairs should be stopped at the top of the unload ramp when downloading guests, be reasonably interpreted as preventing stoppages for employee downloading.

misconduct, [plaintiff] is hard put to argue a theory of corporate disregard." *Meisel v. M & N Mod. Hydraulic Press Co.*, 97 Wn. 2d 403, 410-11 (1982).

Although there is some confusion in the case law regarding the role of an alter ego theory in the veil piercing analysis, the Court will assume that the veil may be pierced if there is an "alter ego" finding even if the corporate form has not been intentionally used to defraud or evade a duty owed to plaintiff. To establish that The Vale Corporation is the alter ego of VR NW Holdings, plaintiff must show that "the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist." *Columbia Asset Recovery Grp., LLC v. Kelly*, 177 Wn. App. 475, 486 (2013) (quoting *Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 553 (1979)). No such showing has been made here. There is no indication that the Vail entities have disregarded corporate formalities, are inadequately capitalized, have intermingled funds or assets, have overlapping ownership, officers, or directors, share offices or addresses, or have failed to appropriately memorialize their dealings. While there is some degree of oversight and control that The Vail Corporation exercises over each of the Vail operating subsidiaries, including as VR NW Holdings, it is not so extensive as to raise an inference that the separate corporations have ceased to exist.

With regards to VHI and VRI, plaintiff has not attempted to show that defendants misused those corporate forms or that VHI or VRI are the alter ego of VR NW Holdings.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 14

# CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. # 74) is GRANTED in part and DENIED in part. The claims against defendants Vail Resorts, Inc., and Vail Holdings, Inc., are DISMISSED. Plaintiff's negligence claim against The Vail Corporation may proceed, but she may not hold that entity liable under a veil piercing or alter ego theory.

Plaintiff's motion to strike and for leave to file a sur-reply (Dkt. # 88) is likewise GRANTED in part and DENIED in part. Defendants' untimely *Daubert* motion has not been considered, but the Court has considered Ms. Spataro's declaration regarding payments made to the workers' compensation fund and plaintiff's sur-reply.

Dated this 27th day of January, 2025.

Robert S. Lasnik
United States District Judge